James B. DOYLE, Plaintiff,

v.

Oliver A. FOX, J. E. Patterson and Corey Gabrielson, Defendants.

No. 31723.

United States District Court,
N. D. California, S. D.

Sept. 17, 1954.

Malone & Sullivan, San Francisco, for plaintiff.

James P. Shovlin, Jr., San Francisco, for defendants.

HARRIS, District Judge.

Plaintiff, lessee of a motel situated near Pleasanton, California, seeks to recover alleged overcharges of rental from defendants, owners and lessors of the motel.

The parties negotiated a lease in December, 1951. Defendants rented their newly constructed motel, which consisted of twenty-two rental units and a swimming pool to be built within a specified period. The units were furnished by lessors and the kitchens were fully equipped. Lessors also provided linens and were obligated to replace them. The lessee undertook duties which were largely those of a manager.

Both plaintiff and defendants understood that the individual rental units were subject to rent regulation. Plaintiff registered the rooms in January, 1952, for a maximum rental for all units of $6,864.

Defendants believed that their master lease with plaintiff was not subject to rent control. They were so informed by Hynes & Bowser, their Oakland attorneys. Not until May of 1952 did they learn that they were required to register the premises with the Office of Rent Control. At that time they requested of the Area Rent Director that he decontrol the premises or fix a fair rental. This he sought to do under Rent Regulation 1, Section 166. The Rent Director failed to win approval of a decontrol recommendation; nor did he establish a maximum rent. The Advisory Board in Alameda County informed the Rent Director that there were no comparable housing accommodations in the area to serve as a yardstick for fixing maximum rent.

In June, 1952, defendants registered the master lease with the Office of Rent Stablilization in Hayward. For maximum rent they referred to the lease itself.

Under the terms of the master lease, plaintiff was required to pay as rental for the inaugural months of January and February of 1952 his gross receipts less $500 to be retained by him. Thereafter he was to pay a minimum of $2,000 per month or his gross receipts less $500 whichever sum was greater.

Plaintiff entered the leasehold premises upon their completion about the middle of January, 1952, and paid no rental for that month. In February, in accordance with the terms of the lease, plain-

tiff paid $175. (through miscalculation this sum was $19 higher than the amount actually owed). For the subsequent months until October, 1952, when plaintiff surrendered his lease, he paid at least $2,000 per month regardless of gross receipts. Had the formula of gross receipts less $500 been applicable, he would have paid considerably less than this sum in March and April when the motel was still struggling to acquire tenants.

The parties do not dispute the facts. Based on the narrative of events, plaintiff contends that he is entitled to be reimbursed for overpayment of maximum rent in the sum of at least $2,831.50. He also contends that under a different interpretation of maximum lawful rent, he is entitled to the return of overcharges in the amount of $11,528. Plaintiff computes this latter sum by utilizing the figure of $175 per month as the maximum rent. This is the amount plaintiff paid for the first full month of occupancy, namely February, 1952. For the lesser figure, plaintiff uses the lease formula of gross receipts less $500 per month throughout the term of the lease. Under this formula the legal maximum varied from month to month as the gross income for the premises gradually increased. Plaintiff suffered substantial losses in March and April of 1952 when he was compelled to pay the alternative minimum of $2,000 per month.

Plaintiff also asks for treble damages, contending that the overcharges were willful and the result of failure to take practicable precautions against the occurrence of the violation. He points out that defendants made inquiry in December 1951, before the premises were under control, and thereafter did nothing to ascertain the scope of the law until May 1952. Defendants note that they not only consulted their counsel before entering into the leasehold agreement, but that they thereafter took numerous steps to have a maximum ceiling imposed by the rental authority or have the premises decontrolled in the alternative.

The record is clear that defendants took proper precautions to ascertain the law and to comply with it. There is no basis for charging them with a willful violation of the rent control law.

Section 39(c) of the Rent Regulations covers a lease of an entire structure. Although previously inoperative, this section was effective at the time plaintiff's lease went into effect.

Section 93 of Rent Regulation 1 provides that the maximum rent shall be "the first rent for such accommodations after the maximum rent date * * * *" Where rent is established by a lease and the provisions of the agreement call for higher rentals during the term of the lease, the lessor is entitled to petition for an adjustment under Section 130.

Plaintiff contends that defendants could charge no more than the rent fixed by the lease and collected by defendants during the first full month of occupancy under the lease rental formula, viz. gross receipts less $500.

Defendants look to Section 166 of the Regulations for relief. This section applies in instances of a dispute between landlord and tenant as to the maximum rental. It required the Director of the rental area to fix the maximum rent after determining the facts or to apply the maximum rental imposed for comparable housing in the area. Plaintiff denies the applicability of Section 166. He points out that as a matter of fact the Director fixed no maximum rent under this section. He further points out that the section itself did not require the Director to establish such a ceiling. He observes that there was no dispute as to the facts upon which the maximum rent would be determined.

Since the Area Rent Director failed to establish a maximum under Section 166 during the period of the application of rent regulations; since the rent control law terminated before the imposition of maximum rent—which could not have been made retroactive, Markbreiter v. Woods, Em.App., 163 F.2d 993—de-

fendants argue that no ceiling existed. Accordingly, they assert that there could have been no payment in excess of a maximum rent prescribed and thus there could have been no overcharge.

There is no controlling authority on this subject. In order to make applicable plaintiff's legal theory that the *first rent* under the lease formula for the accommodations constituted the maximum under the terms of the regulations (Sec. 93 of Rent Regulation 1), it would be necessary for the Court to adopt, quite arbitrarily, a part of the lease, to the exclusion of the other rental provisions in the same document which was tailored to meet a specific landlord-tenant commercial relationship. Adoption of the formula requires the Court to implement the regulations and to conjecture as to their scope.

█ It is conceded that no rent was paid the first month. Therefore, we must look to the lease for aid and assistance. The rental provisions cannot be segmented in order to fix a maximum. Cf. OPA interpretation MR–I issued Jul. 7, 1942; Revised May 13, 1943; Pike & Fischer OPA Service Vol. 8, p. 200:1115. This Court is in no better position than the Area Rent Control Director was when he was petitioned to make a determination. Nor has the Court factors of comparable rental conditions to look to for guidance.

The precise problem does not involve abstract legal propositions, nor can it be disposed of by the application of the principles enunciated in United States v. McCrillis, 1 Cir., 200 F.2d 884.

█ The maximum rental not having been declared or fixed in the first instance either by administrative process or judicial sanction or decree, any action fixing a maximum rental of an amount less than that called for in the rental clause of the lease would in effect result in retroactive procedure wherein plaintiff would receive an unwarranted re-

fund. Rhodes v. Hanschl, D.C., 94 F. Supp. 1009, at page 1010.

Judgment may be entered for defendants upon presentation of findings of fact and conclusions of law.