[Civ. No. 18810.   Second Dist., Div. Three.   July 21, 1952.]

CHARLES F. KRIM, Appellant, v. EMMA A. SEVERANCE, Respondent.

McGinley & Hanson and Howard D. Hanson for Appellant.

Barry M. Woodmansee for Respondent.

WOOD (Parker), J.—Action, under the provisions of the Federal Housing and Rent Act, to recover alleged overcharges paid as rental for residential property. Plaintiff appeals from the judgment for defendant.

On July 12, 1948, the plaintiff and defendant entered into a written lease whereby plaintiff leased from defendant a nine-room *furnished* dwelling house at 10734 Lindbrook

Avenue, Los Angeles, for 18 months, commencing July 24, 1948, and ending January 24, 1950, at a monthly rental of $250. The lease also provided that defendant (owner) would pay for gardening service. Plaintiff occupied the property until March 24, 1950, and paid said agreed amount of rental.

Under the provisions of the Emergency Price Control Act of 1942, the maximum rental fixed by the rent director for said house, unfurnished and without gardening service, was $125 per month. An amendment of said Price Control Act of 1942, being section 202(c) (3), provided in effect that housing accommodations which were not rented for 24 consecutive months during the period commencing February 1, 1945, were not controlled housing accommodations. The house involved here was owner-occupied from December 3, 1943 to December 1, 1947. On December 18, 1947, the rent director, upon application by the owner, made an order approving decontrol of the house. (The Emergency Price Control Act of 1942 was superseded by the Housing and Rent Act which became effective July 1, 1947.)

At the time the lease was made (July 12, 1948), the renting of said property was not controlled by the provisions of the Housing and Rent Act, and the defendant was not restricted by law as to the amount of money that she might charge for the use of the property. On April 1, 1949, the Housing and Rent Act of 1949 become effective, and under the provisions thereof the renting of said property was re-controlled.

In January, 1950, plaintiff asked defendant why she had not applied for "a ceiling on the *furnished* price of the house." Defendant replied that the house was not under control and there was no ceiling on it. In January and in February, 1950, plaintiff sent a letter to defendant asking her to apply for an adjustment of the rental of said premises as a furnished housing accommodation. Defendant testified (on cross-examination by plaintiff's counsel) that she attempted to get a ceiling on the *furnished* house, and that two men in the rent control office told her "not to set any ceiling on it."

Appellant (plaintiff) contends that, upon recontrol, the maximum rental of $125 per month for the unfurnished house was reestablished as the maximum rental for the housing accommodations as of April 1, 1949; that since defendant did not obtain an order from the rent director increasing said maximum rental by reason of the change to a furnished unit,

the maximum rental of $125 per month *unfurnished* is the maximum rental for said premises whether furnished or unfurnished; that plaintiff is entitled to judgment for three times the amount by which the twelve rental payments of $250 per month (made after recontrol on April 1, 1949, for the *furnished* house and gardening service) exceed the fixed maximum rental of $125 per month for the *unfurnished* house. The total amount of treble damages sought by him is $4,500. He also asks for $500 as attorney's fees.

Respondent (defendant) contends that the housing accommodations provided for plaintiff were of the reasonable value of $250 per month, and that the collection of said amount after recontrol on April 1, 1949, was tentative and subject to readjustment by the rental director but the collection was not unlawful. She also asserts that said accommodations were luxury accommodations and that by reason of an amendment to the Housing and Rent Act on January 15, 1950, which removed accommodations in the "luxury class" from rent control, the said premises were decontrolled again on said date.

On April 1, 1949, subsection (h) was added to section 204 of the Housing and Rent Act (63 Stats. 25, 50 U.S.C.A. § 1894, p. 708 (Supp. 1951)), which subsection provided as follows: "(h) For controlled housing accommodations which were not included within the definition of 'controlled housing accommodations' as such definition read prior to the effective date of the Housing and Rent Act of 1949, the maximum rent shall be the maximum rent last in effect for such housing accommodations under Federal rent control, plus or minus applicable adjustments; or, if no maximum rent was ever in effect for such housing accommodations, the maximum rent shall be the rent generally prevailing in the defense-rental area . . . plus or minus applicable adjustments: . . . ."

The housing accommodations herein, which became controlled under the 1949 Act, were not included within the definition of "controlled housing accommodations" as such definition read prior to the effective date of said act, April 1, 1949. The house herein had not been under rent control for more than a year prior to the effective date of the 1949 Act. No maximum rental had ever been fixed upon the house as a furnished housing accommodation. The "maximum rent last in effect" for the house (unfurnished) was $125 per month. There was no "maximum rent last in effect" for the

house as a furnished housing accommodation—including gardening service. It appears, therefore, under said subsection (h) of section 204, that the maximum rent for "such housing accommodations" herein (which were not "controlled housing accommodations" as defined prior to said effective date of the 1949 Act) is the $125 per month "plus or minus applicable adjustments." As above stated, the lease of the furnished house (including gardening service) was made when the house was not under rent control. By the use of the words "plus or minus applicable adjustments," in stating what the maximum rent should be after recontrol, it is clear that the Congress did not intend that the maximum rent should be merely the rent last in effect regardless of any legal obligation on the part of the owner, created during decontrol, to provide additional benefits for the tenant. Those words indicate that the Congress contemplated that rental adjustments necessarily would be required in situations similar to the one here, where an existing lease, made when rent control was not in effect, covers furniture and services not provided when the rent last in effect was fixed. If it had been intended that the rent last in effect should be the maximum rent until the rent director had approved an adjustment of the rent upon application of the owner, and that the receipt of additional rent by the owner prior to such approval would be unlawful, such an intention would have been stated clearly in the statute. Certainly the addition of the words "plus or minus adjustments" in said subsection (h) of the statute was not intended merely to be the statutory authority for the rent director to make applicable rent adjustments. He has always had that authority. The enactment of the recontrol amendment did not make it necessary to include a provision that the director had permission to make applicable rent adjustments. The maximum rent after recontrol, under said section (h) of section 204 of the 1949 Act, for "such housing accommodations" as those involved here was the combination or aggregate of the "rent last in effect" for the unfurnished house, namely, $125 per month, and the amount that should be allowed for the rental of furniture and for gardening service. The parties had agreed in July, 1948, during decontrol, upon the amount of $250 per month as the reasonable and proper amount, and the tenant (plaintiff) had paid that amount for 9 months prior to recontrol (April 1, 1949) without any complaint as to the amount. After recontrol the tenant continued to pay, and the owner continued to accept, the same

amount for 12 months (until two months after the expiration of the lease term). It is the accepting and receiving of payment of rent in excess of the maximum rent provided by statute that is unlawful. (Housing and Rent Act of 1947, § 205, as amended.) In the present case the amount of maximum rent, that is, the amount of the rent last in effect plus applicable adjustments, has not been fixed by the rent director. It is not known to what extent, if any, the rental accepted exceeds the maximum rent provided by statute. Appellant (plaintiff) asserts that $125 per month, which was the last rent in effect for the unfurnished house, is the maximum rent until the owner petitions for and obtains an order of the rent director increasing that amount on the basis that furniture and gardening services are provided. He cites certain cases wherein it is held that an owner, in order to lawfully collect increased rental, must petition for and obtain an order from the rent director allowing such increase. In those cases a maximum rental for certain accommodations had been fixed by the director and, as above stated, the holdings therein were to the effect that maximum rents once fixed can be increased only by an order of the director upon petition of the owner. ▮ In the present case, as above stated, the maximum rent prescribed by said section (h) has not been fixed. The circumstances in the present case, with respect to accepting rent after recontrol, are similar to the circumstances with respect to accepting rent when property is first rented and before a maximum rent has been fixed by the rent director. In *Woods* v. *Stone,* 333 U.S. 472 [68 S.Ct. 624, 92 L.Ed. 815], wherein the owner had rented the property and collected rent without having registered the property, it was held that he had a right to collect the rental agreed upon "subject to readjustment," that the "statute and regulations made his rentals tentative but not unlawful." A similar ruling was made in *Parshalle* v. *Curl,* 90 Cal.App.2d 641, 649 [203 P.2d 802].

By reason of the above conclusions, it is not necessary to determine other contentions of the parties.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied August 8, 1952, and appellant's petition for a hearing by the Supreme Court was denied September 18, 1952.